**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

     Plaintiff,

v.                                    Case No. 13-20061

BYRON PRESTON,

     Defendant.

_____/

**OPINION AND ORDER (1) SUSTAINING PLAINTIFF'S OBJECTIONS;
(2) REJECTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION;
AND (3) DENYING DEFENDANT'S MOTION TO SUPPRESS**

     Defendant Byron Preston moves to suppress a firearm seized by City of Detroit police officers on December 31, 2012. The motion was referred to a magistrate judge who held a hearing and issued a Report and Recommendation ("R&R") advising the court to grant the motion. The Government timely filed objections to the R&R, and Defendant responded. Given the importance of witness testimony and credibility determinations in resolving the motion, this court held a second hearing. For the following reasons, the court will sustain the Government's objections, reject the R&R, and deny Defendant's motion to suppress.

## I. STANDARD

     The filing of timely objections to an R&R requires the court to "make a *de novo* determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667 (1980); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).

This *de novo* review requires the court to re-examine all of the relevant evidence previously reviewed by the magistrate judge in order to determine whether the recommendation should be accepted, rejected, or modified in whole or in part. 28 U.S.C. § 636(b)(1).

"The filing of objections provides the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately," *Walters*, 638 F.2d at 950, enabling the court "to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute," *Thomas v. Arn,* 474 U.S. 140, 147 (1985). As a result, "'[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have.'" *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (quoting *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)).

## II. DISCUSSION

### A. Witness credibility

The magistrate judge held a hearing on the motion to suppress and found two portions of Officer Jackson's testimony not credible: (1) that Preston lingered momentarily behind a dumpster; and (2) that Officer Jackson asked Preston a preliminary question, such as "Where are you headed?" before requesting to see Preston's hands. The Government objects to these credibility findings. As Officer Jackson's testimony is critical to whether the evidence should be suppressed, the court conducted a second motion hearing and makes its own credibility determinations.

2

During the hearing, Officer Jackson testified in a calm and confident demeanor, giving the court no reason to suspect the truthfulness of his testimony.  His recitation of the events was reasonable and remained consistent during direct examination, cross examination, and questioning from the court.  No testimony or evidence was offered to contradict the two portions of his testimony at issue.  There is no basis to find not credible Officer Jackson's sworn and uncontradicted testimony that Preston lingered behind a dumpster and that Officer Jackson spoke to Preston preliminarily.

## B. The encounter and whether it was consensual

The Government argues that the magistrate judge erred in concluding that a consensual encounter did not occur between Preston and Officer Jackson.  Relatedly, the Government also objects to the magistrate judge's finding that Officer Jackson's request to see Preston's hands constituted an order that transformed the encounter into a *Terry* stop.

The Government's objections in this regard are in actuality arguments in favor of resolving the motion in favor of it's suggested conclusion.  In order to resolve these questions, the court will simply recite the substance of the encounter and find facts *de novo* as the court came to understand the encounter from the testimony and exhibits offered at the hearing.

On New Year's Eve at about 9:30 p.m., Officers Jackson and Harnphanich and Sergeant Duncan saw Preston walking through an alley in a high-crime area approaching the parking lot of a liquor store.  As Preston turned in the direction of the store's front door, toward which the semi-marked police car was proceeding, he appeared to see the car and, in response, to alter his path so as to avoid proceeding

further in their direction.  The Officers wondered if he was "casing" the store for a possible robbery.

Continuing to walk through the alley, Preston passed out of sight behind a white dumpster and lingered there a moment longer than seemed right.  The Officers wondered if he was hiding something.[1]

As the police car moved further into the parking lot, Preston appeared from the alley and walked into the lot in the direction of the car and toward the front door of the liquor store.  Sergeant Duncan, the patrol car's driver, did not activate the overhead lights or siren, honk the horn, or block Preston's path.  Officer Jackson, sitting in the front passenger seat—and one of three officers in the car—lowered his window and spoke to Preston in a conversational tone of voice, saying something similar to "What's up?" or "Where are you heading?"  Jackson did not command Preston to "halt," "stop," "stand still," or anything similar.  Officer Jackson remained inside the car and did not handle or display his firearm or give any hand signals to Preston.

Preston, in response to Officer's Jackson's "What's up?", approached the police car.  He was wearing a hooded sweatshirt with his hands inside of his pockets.  As Preston neared the police car, Officer Jackson became concerned that Preston might be armed.  For his own safety, Officer Jackson asked something like "Are you armed?"

---

[1] Although the Government points out several *Terry*-justifying factors—the undisputedly high-crime nature of the area in which Preston was walking, the fact that he was peering toward the liquor store from the alley as he walked, his move toward and then away from the police car, and his momentary pause behind the dumpster wall—ultimately the Government does not argue that Officer Jackson possessed sufficient reasonable suspicion to support a *Terry* stop.  The court need not and will not resolve this issue in the absence of a Government objection to the magistrate judge's recommended finding that Jackson lacked reasonable suspicion.

or "Do you have a gun?" and asked to see Preston's hands.  In so asking, Jackson did

not command or "order" Preston to show his hands.  Although Officer Jackson's

unsworn synopsis of the encounter in his Preliminary Criminal Report uses the term

"ordered," Officer Jackson's sworn testimony belies the characterization.  He could not

have been more clear that his tone of voice was conversational or that he was not loud,

challenging, or demanding.[2]  The court finds his request of Preston to expose his hands

was only that—a request, and nothing more.  It was not an "order."

The request and accompanying question brought Preston's response: "Yes, it's

in my coat."  The gun was secured and this prosecution followed, Preston being found

to have had a prior felony.  The entire series of events lasted only a few seconds.

"[A] seizure does not occur simply because a police officer approaches an

individual and asks a few questions.  So long as a reasonable person would feel free 'to

disregard the police and go about his business,' the encounter is consensual and no

reasonable suspicion is required."  *Florida v. Bostick*,  501 U.S. 429, 434 (1991)

(quoting *California v. Hodari D.,* 499 U.S. 621, 628 (1991)).  A consensual police-citizen

encounter is characterized by the voluntary cooperation of a citizen in response to

non-coercive questioning.  *Bostick*, 501 U.S. at 434. ("[L]aw enforcement officers do not

violate the Fourth Amendment by merely approaching an individual on the street or in

another public place, by asking him if he is willing to answer some questions, by putting

questions to him if the person is willing to listen, or by offering in evidence in a criminal

prosecution his voluntary answers to such questions."  (citation omitted)).

---

[2] Moreover, Officer Jackson appears young and without a particularly large or
imposing frame; his voice is consistent with that of a youthful man.

Officer Jackson's encounter with Preston was such a consensual situation. Preston was not hemmed in, pressed, commanded, or signaled to do anything. He was hailed in the same kind of conversational tone and manner heard thousands of times an hour on the streets of every city in the nation, large and small: "Hey! What's up?" Very few questions could be cast as more innocuous than this.

Preston had many choices at this point. He could have nodded and kept walking. He could have responded, "Hey yourself," or "Nothing much," or any other one of the myriad of insubstantial and simple verbal responses commonly used to signify acknowledgment of the initial greeting. He could have waved and not spoken. He also was free to ignore Officer Jackson altogether, pretending not to hear, and continue along his path. He had not been ordered, directed, or commanded to do anything. But his choice was to engage and walk over to the side of the car where Officer Jackson sat. And when he chose a closer encounter, the concern for the officer safety became greater and justified a request—again, not an "order," but a *request*—to remove his hands from his pockets and an inquiry similar to "Do you have a gun?"

Fourth Amendment scrutiny is not triggered unless an encounter loses its consensual nature. *Bostick*, 501 U.S. at 434. "A consensual encounter becomes a seizure when 'in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *United States v. Jones*, 562 F.3d 768, 772 (6th Cir. 2009) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). A seizure occurs "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S.

1, 19 n.16 (1968). A person is seized "whenever a police officer accosts an individual and *restrains his freedom to walk away.*" *Id.* at 16 (emphasis added).

Officer Jackson, in this case, used no physical force and offered no "show of authority." He did not, in any way, restrain Preston's freedom to simply walk away. No *Terry* stop occurred, and there is no basis on which to suppress the evidence seized. The interaction between Preston and Officer Jackson constituted a consensual encounter. Objections # 2 and # 3 will be sustained.

### III. CONCLUSION

Accordingly, IT IS ORDERED that Plaintiff's objections [Dkt. # 25] are SUSTAINED and the Magistrate Judge's report and recommendation [Dkt. # 22] is REJECTED.

IT IS FURTHER ORDERED that Defendant's motion to suppress motion [Dkt. # 13] is DENIED.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: May 28, 2013

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 28, 2013, by electronic and/or ordinary mail.

s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522